UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS CROOK, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>WYNDHAM VACATION OWNERSHIP, INC., et al.,<br><br>    Defendants. | Case No. 13-cv-03669-WHO<br><br>**ORDER ON MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. No. 15 |

Before the Court is the Motion to Compel Arbitration of defendants Wyndham Vacation Resorts, Inc., and Wyndham Worldwide Corporation (together, "Wyndham"). [1] For the reasons below, the Motion to Compel Arbitration is GRANTED.

**FACTUAL BACKGROUND**

Plaintiffs Thomas and Donna Crook are senior citizens who own vacation time shares sold by Wyndham. They allege that Wyndham targets senior citizens and intentionally misleads them about the terms of their time share purchase contracts to increase its sales. Compl. ¶ 1. Plaintiffs' putative class action complaint brings causes of action against Wyndham and two of its employees, Anita Howell ("Howell") and Linda Tanner ("Tanner"), for (1) elder financial abuse under CAL. WELF. & INST. CODE § 15610.30; (2) fraud; (3) age discrimination under the Unruh Civil Rights Act, CAL. CIV. CODE §§ 51 *et seq.*; (4) unfair business practices under CAL. BUS. & PROF. CODE §§ 17200 *et seq.*; (5) violation of California's Consumer Legal Remedies Act, CAL. CIV. CODE §§ 1750 *et seq.*; and (6) intentional misrepresentation.

---

[1] Wyndham Vacation Resorts, Inc., has been incorrectly sued as Wyndham Vacation Ownership, and Wyndham Worldwide Corporation has been incorrectly sued as Wyndham Worldwide. Dkt. No. 15 at 3.

Since 2001, the plaintiffs have entered into eleven time share agreements with Wyndham for properties in Hawaii, Colorado, Las Vegas, and San Francisco, among others. Dkt. No. 15 at 4; Declaration of Beronica Coleman ("Coleman Decl.") ¶ 2. They allege that between July 2010 and June 2012, Wyndham misled them into buying more timeshare interests by intentionally misrepresenting the terms of their contracts. For instance, Wyndham sales representative Anita Howell allegedly said that she would "restructure" the plaintiffs' agreements to lower their interest rate, but in fact billed them for $30,000 of timeshare interests without their knowledge. Compl. ¶ 16. When the plaintiffs disputed the charges, Howell informed them that upgrading to the "Presidential Reserve level" would give them the option to have Wyndham buy back their time shares. Compl. ¶ 18. As a result, the plaintiffs bought an additional $49,000 of timeshare interests above the $100,000 they had previously invested in order to reach the Presidential Reserve level, believing that they could later recover the full amount through the buyback option. Compl. ¶ 19. When the plaintiffs attempted to exercise the option, Wyndham rejected their request. Compl. ¶ 26. On another occasion, Howell allegedly represented that she would "transfer their deeds to San Francisco" without explaining that this would result in them being billed for another $66,000. Compl. ¶ 20.

On February 23, 2011, the plaintiffs entered into their most recent agreement with Wyndham to purchase a time share in San Francisco (the "February 2011 Agreement"). The agreement contains a dispute resolution clause that requires arbitration of "any dispute between the parties arising out of this Agreement . . . ." Coleman Decl. ¶ 3, Ex. 1 ¶ 18. Subparagraphs (a) and (b) concern notice and objection periods for escrow claims. *Id*. ¶ 18(a), 18(b). Subparagraphs (c) through (j) contain broadly applicable arbitration rules. They provide that Wyndham "shall advance the fees necessary to initiate the dispute or claim resolution process, with the costs and fees . . . to be paid as agreed by the parties," or if the parties cannot agree, "as determined by the person or persons presiding at the dispute or claim resolution proceeding or hearing." *Id*. ¶ 18(c). The dispute resolution "shall be conducted in accordance with procedures that are equivalent in substance to the Commercial Arbitration Rules of the American Arbitration Association," before a "neutral or impartial person" selected by the parties. *Id*. ¶ 18(d) - (f). The dispute resolution

2

"shall be in San Francisco County" unless the parties agree to another location, and must be "promptly and timely" commenced and concluded. *Id.* ¶ 18(g) - (i). The presiding person "shall be authorized to provide all recognized remedies available at law or equity for any cause of action that is the basis of the proceeding" and "[t]he parties may authorize the limitation or prohibition of punitive damages." *Id.* ¶ 18(j).

The plaintiffs signed three other agreements with Wyndham between January 2010 and September 2010 that contain similar dispute resolution clauses. Coleman Decl. ¶¶ 6-9, Ex. 2 ¶ 32, Ex. 3 ¶ 18, Ex. 4 ¶ 18.[2]

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") governs the motion to compel arbitration. 9 U.S.C. §§ 1 *et seq*. Under the FAA, a district court determines (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). "To evaluate the validity of an arbitration agreement, federal courts should apply ordinary state-law principles that govern the formation of contracts." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (citation omitted). If the court is satisfied "that the making of the arbitration agreement or the failure to comply with the agreement is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999).

## DISCUSSION

Plaintiffs assert that the dispute resolution clause is unenforceable for several reasons. First, they argue that the dispute resolution clause is not valid because the entire February 2011 Agreement was fraudulently obtained. Second, they assert that the dispute resolution clause itself is invalid because it is unconscionable. Third, Plaintiffs contend that the provision is limited in scope and does not apply to the causes of action asserted. Finally, they argue that the dispute

---

[2] Defendants assert, and the plaintiffs do not dispute, that the February 2011 Agreement contains a merger clause that supersedes and replaced the prior agreements. Coleman Decl. ¶ 3, Ex. 1 ¶ 13.

resolution clause cannot be enforced against Howell and Tanner because they are not signatories to the February 2011 Agreement. This Order addresses each argument below.

**I. VALIDITY OF THE FEBRUARY 2011 AGREEMENT**

The plaintiffs assert that "any contracts they had" with Wyndham, including the February 2011 Agreement, are "void in their entirety" because they were fraudulently obtained. Dkt. No. 16 at 1-2. But under the FAA, the enforceability of the overall agreement is to be considered by the arbitrator, not the court. *Rent-A-Ctr., W., Inc. v. Jackson*, 130 S. Ct. 2772, 2778 (2010) ("where the alleged fraud that induced the whole contract equally induced the agreement to arbitrate which was part of that contract—we nonetheless require the basis of challenge to be directed specifically to the agreement to arbitrate before the court will intervene"); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, (1967) ("the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally"); *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1271 (9th Cir. 2006) ("where the causes of action or claims within a complaint are, in essence, an effort to invalidate the entire contract, then the federal court will send the dispute to arbitration"); *Higgins v. Super. Ct. of Los Angeles Cnty.*, 140 Cal. App. 4th 1238, 1249 (2006) ("Under the FAA, a court may not consider a claim that an arbitration provision is unenforceable if it is a subterfuge for a challenge that the entire agreement (in which the arbitration clause is only a part) is unconscionable.").

At the October 30, 2013 hearing, plaintiffs urged the Court to follow the holding in *Ontiveros v. DHL Exp. (USA), Inc.,* 164 Cal. App. 4th 494 (Ct. App. 1st Dist. 2008), where the California Court of Appeal held under state law that a dispute resolution clause giving an arbitrator exclusive authority to decide enforceability was unconscionable. *Id*. at 505.[3] *Ontiveros* was decided before the United States Supreme Court issued its opinion in *Rent-A-Center, West, Inc., v. Jackson*, which held that under the FAA, a challenge to the enforceability of an agreement as a whole, as opposed to a challenge to the arbitration clause within the agreement, is to be

---

[3] Plaintiffs also urged at the hearing that the merger provision in the February 2011 Agreement, paragraph 13, excludes their fraud claim from paragraph 18, the arbitration provision. This argument is discussed in section III, below.

1   submitted to the arbitrator. 130 S. Ct. at 2783. Because the defendants' motion is governed by the
2   FAA, the holding in *Rent-A-Center* applies. Here, the plaintiffs do not claim that the specific
3   dispute resolution clause itself was fraudulently obtained. Instead they claim that the entire
4   February 2011 Agreement and all of their prior agreements with Wyndham were procured by
5   fraud. Dkt. No. 16 at 1-2. Therefore, these claims are for the arbitrator, not the Court.

The plaintiffs also challenge the dispute resolution clause as unconscionable and overbroad. The Court turns to the specific arguments regarding the enforceability of the dispute resolution clause itself: where a plaintiff's claims "challenge specifically the validity of the agreement to arbitrate," such claims are "for the court to decide." *Nagrampa*, 469 F.3d at 1269 (citation omitted).

**II. VALIDITY OF THE DISPUTE RESOLUTION CLAUSE**

Under Section 2 of the Federal Arbitration Act, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.2. The Supreme Court of the United States has interpreted this language to mean that arbitration agreements may be "invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability" without contravening section 2. *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1746 (2011).

Plaintiffs assert that the dispute resolution clause is unenforceable because it is both procedurally and substantively unconscionable. Whether a contract is unconscionable is a question of law. *Patterson v. ITT Consumer Fin. Corp.*, 14 Cal. App. 4th 1659, 1663 (1993). In California, unconscionability includes an "absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Lhotka v. Geographic Expeditions, Inc.*, 181 Cal. App. 4th 816, 821 (Ct. App. 2010) (citation omitted). Accordingly, unconscionability has both a "procedural" and a "substantive" element. *Id*.

Procedural unconscionability occurs where a contract or clause involves oppression, consisting of a lack of negotiation and meaningful choice, or surprise, such as where the term at issue is hidden within a wordy document. *Id*. "California law treats contracts of adhesion, or at least terms over which a party of lesser bargaining power had no opportunity to negotiate, as

5

procedurally unconscionable to at least some degree." *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1004 (9th Cir. 2010). Substantive unconscionability occurs where the provision at issue "reallocates risks in an objectively unreasonable or unexpected manner." *Lhotka*, 181 Cal. App. 4th at 821 (citation omitted). "Substantive unconscionability focuses on the one-sidedness or overly harsh effect of the contract term or clause." *Id*. at 824–25 (citation omitted).

Both procedural and substantive unconscionability must be found before a term will be deemed unenforceable, but both need not be present to the same degree. Rather, "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000).

### A. Procedural Unconscionability

The plaintiffs argue that the dispute resolution clause is procedurally unconscionable because it was: (1) found in an adhesive form contract; (2) never explained or mentioned by Wyndham employees; (3) presented to the plaintiffs on a "take it or leave it" basis; and (4) silent about the right to a jury trial. Dkt. No. 16 at 8.

"The term contract of adhesion signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Armendariz*, 24 Cal. 4th at 113. The Court agrees that the dispute resolution clause is part of is a contract of adhesion and thus it is presumptively unconscionable. The plaintiffs were never given the choice of accepting or rejecting the dispute resolution clause. "Such a finding, however, only indicates that the agreement is somewhat procedurally unconscionable, not that it is unenforceable." *Naria v. Trover*, No. 13-02086, 2013 WL 4516483, at *3 (N.D. Cal. August 23, 2013).

Although the dispute resolution clause at issue is somewhat procedurally unconscionable, several aspects of it weigh against finding it unenforceable. The dispute resolution clause is set forth in a separate paragraph titled "Dispute Resolution" located immediately underneath the area where the plaintiffs applied their initials, and the entire contract is only five pages long. *Kilgore v.*

6

*KeyBank, Nat'l. Ass'n*, 718 F.3d 1052, 1059 (9th Cir. 2013) (holding that there is no procedural unconscionability where arbitration clause was not "buried in fine print in the Note, but was instead in its own section" and "clearly labeled"). Additionally, the plaintiffs' claims of oppression and unfair surprise are unpersuasive in light of the fact that they have signed eleven time share agreements with Wyndham since 2001, with the four most recent ones containing similar dispute resolution clauses. Finally, the FAA prohibits courts from refusing to enforce an arbitration clause because it "disallow[s] an ultimate disposition by a jury." *Concepcion*, 131 S. Ct. at 1747. The dispute resolution clause is therefore only slightly procedurally unconscionable.

### B. Substantive Unconscionability

Plaintiffs argue that the dispute resolution clause is substantively unconscionable because it: (1) requires Plaintiffs to pay the costs of arbitration; (2) is silent about the right to a jury trial; (3) limits discovery by requiring the arbitration to proceed under the rules of the American Arbitration Association ("AAA Rules"); 4) provides a San Francisco County forum even though a previous contract provided for an Orange County forum; (5) does not provide for judicial review; and (6) does not provide for a written decision by the arbitrator. Dkt. No. 16 at 9. None of these arguments support a finding that the dispute resolution clause is substantively unconscionable.

Contrary to the plaintiffs' contention, the dispute resolution clause provides that Wyndham "shall advance the fees necessary to initiate the dispute or claim resolution process, with the costs and fees . . . to be paid as agreed by the parties," or if the parties cannot agree, "as determined by the person or persons presiding at the dispute or claim resolution proceeding or hearing." Coleman Decl., Ex. 1 ¶ 18(c). It also incorporates the AAA Rules, which contain supplementary procedures in consumer-related disputes that shift costs away from consumers and onto selling agencies like Wyndham. *Id*. ¶ 18(d); Declaration of Sarah D. Youngblood in Support of Reply ("Youngblood Decl."), Ex. A at 12. And contrary to Plaintiff's assertions, the AAA Rules specifically state that "awards shall be in writing," which will permit judicial review. *Id*. at 10; *Lara v. Onsite Health, Inc.*, 896 F. Supp. 2d 831, 845 (N.D. Cal. 2012) (holding that where arbitration agreement provides for a written decision and does not expressly preclude judicial review, the agreement "can be interpreted to provide for judicial review."). Furthermore, the FAA

7

prohibits courts from refusing to enforce an arbitration clause because it "fail[s] to provide for judicially monitored discovery" or "disallow[s] an ultimate disposition by a jury." *Concepcion*, 131 S. Ct. at 1747. Accordingly, these arguments are untenable as evidence of unconscionabilty.

Finally, the Plaintiffs complain that various versions of their agreements provide for different fora. The February 2011 Agreement provides for arbitration in San Francisco County. The plaintiffs provide no authority or reason why requiring arbitration in San Francisco County is unconscionable. San Francisco is where the time share property is located, where the plaintiffs visited on multiple occasions to discuss the terms of their contracts with employees in Wyndham's San Francisco office, and where the February 2011 Agreement was signed. Thus, there is no basis for finding the agreement unenforceable on this ground.

In sum, because the dispute resolution clause is not substantively unconscionable, and only somewhat procedurally unconscionable, the provision is valid and enforceable.

### III. SCOPE OF THE DISPUTE RESOLUTION CLAUSE

The plaintiffs argue that arbitration cannot be compelled because the dispute resolution clause does not encompass their claims. Specifically, they assert that because subparagraphs (a) and (b) concern notice and objection periods for escrow claims, the dispute resolution clause applies only to actions by Wyndham against a buyer who has defaulted. Dkt. No. 16. at 2; *see* Coleman Decl., Ex. 1 ¶ 18(a), 18(b). At oral argument, plaintiffs contended that the merger provision in paragraph 13 of the February 2011 Agreement excludes their fraud claims altogether and that the Court should retain jurisdiction on that basis. Plaintiffs also argue that the provision is impermissibly unilateral because it only allows Wyndham to initiate disputes. Dkt. No. 16 at 3.

The plaintiffs' objections to the scope of the dispute resolution clause must be decided by the arbitrator. Subparagraph (d) of the dispute resolution clause incorporates the AAA Rules. Coleman Decl., Ex. 1 ¶ 18(d). Rule 7(a) of the AAA Rules provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement."[4] "Virtually every circuit to have

---

[4] Accessed on October 25, 2013 at: http://www.adr.org/aaa/faces/rules/searchrules (follow "Commercial Arbitration Rules and Mediation Procedures" hyperlink).

considered the issue has determined that incorporation of the American Arbitration Association's (AAA) arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013). For that reason, the questions of whether the dispute resolution clause is limited to actions in which a buyer has defaulted or whether the merger provision excludes plaintiffs' fraud claims requires interpretation of the February 2011 Agreement and is subject to arbitration. *See Rent-A-Ctr., W., Inc*., 130 S. Ct. at 2778-2779. Finally, contrary to plaintiffs' argument, the AAA Rules provide detailed procedures for consumers to initiate disputes. *See* Youngblood Decl., Ex. A. For all these reasons, interpretation of the scope of the agreement must be submitted to arbitration.

**IV. NONSIGNATORY PARTIES**

The plaintiffs assert that arbitration cannot be compelled against defendants Howell and Tanner because they are not signatories to the February 2011 Agreement. Dkt. No. 16 at 13. The Ninth Circuit and courts in this district have held that a nonsignatory to an arbitration agreement can compel arbitration "so long as (1) the wrongful acts of the agents for which they are sued relate to their behavior as agents or in their capacities as agents, and (2) the claims against the agents arise out of or relate to the contract containing the arbitration clause." *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 916-17 (N.D. Cal. 2011) (citations omitted). The plaintiffs state in their Complaint that the defendants are all agents of each other and "were acting in the course and scope of this agency . . . ." Compl. ¶ 8. It is also undisputed that the plaintiffs' claims arise from the negotiation, signing, and performance of their time share agreements. Consequently, the plaintiffs' inclusion of Howell and Tanner as defendants do not alter the obligation to arbitrate their claims.

**CONCLUSION**

For the reasons above, the Motion to Compel Arbitration is GRANTED and this action is DISMISSED.

**IT IS SO ORDERED**.

Dated: November 4, 2013



WILLIAM H. ORRICK
United States District Judge