UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

THOMAS CROOK, et al.,

  Plaintiffs,

v.

WYNDHAM VACATION OWNERSHIP, INC., et al.,

  Defendants.

Case No. 13-cv-03669-WHO

**ORDER DENYING MOTION FOR CLARIFICATION OF ORDER COMPELLING ARBITRATION**

Re: Dkt. No. 47

## INTRODUCTION

This is a putative class action arising from the sale of vacation timeshares by defendants Wyndham Vacation Resorts, Inc. and Wyndham Worldwide Corporation (collectively, "Wyndham") to plaintiffs Thomas and Donna Crook.[1] More than eighteen months ago, in November 2013, I issued an order granting Wyndham's motion to compel arbitration and staying the case pending arbitration. Following an unsuccessful appeal of that order, plaintiffs filed their arbitration demand and requested class treatment in arbitration. Wyndham refused to consent to class arbitration and now moves for an order (1) compelling arbitration of plaintiffs' claims; (2) declaring that class arbitration is not available; and (3) staying the case pending arbitration.[2] Because the parties clearly and unmistakably agreed that an arbitrator would decide whether class arbitration is available under their arbitration agreement, the motion is DENIED. Pursuant to the agreement it entered with plaintiffs, Wyndham must raise this issue with the arbitrator.

---

[1] Wyndham Vacation Resorts, Inc., has been incorrectly sued as "Wyndham Vacation Ownership, Inc.," and Wyndham Worldwide Corporation has been incorrectly sued as "Wyndham Worldwide." *See* Dkt. No. 15 at 3; Dkt. No. 27 at 1 n.1.

[2] Wyndham's motion is titled, "Motion for Clarification of Order Compelling Arbitration and for Order Precluding Class Arbitration." Dkt. No. 47.

**BACKGROUND**

Plaintiffs are senior citizens who purchased vacation timeshares from Wyndham. Between 2001 and 2011, they entered eleven timeshare agreements with Wyndham. They entered the most recent of these agreements on February 23, 2011 ("February 2011 Agreement"). The February 2011 Agreement contains a dispute resolution clause that applies to "any dispute between the parties arising out of this Agreement." Feb. 2011 Agmt. ¶ 18 (Dkt. No. 15-1). "Agreement" is defined as "[t]his Purchase and Sale Agreement and Escrow Instructions for Vacation Ownership." *Id.* ¶ 1. The dispute resolution clause provides that the dispute resolution process "shall be conducted in accordance with procedures that are equivalent in substance to the Commercial Arbitration Rules of the American Arbitration Association." *Id.* ¶ 18(d).

On November 16, 2012, plaintiffs filed a putative class action complaint in the Superior Court of California for the County of San Francisco, alleging the following causes of action against Wyndham and two of its employees: (i) elder financial abuse in violation of Cal. Welf. & Inst. Code § 15610.30; (ii) common law fraud; (iii) age discrimination in violation of California's Unruh Civil Rights Act, Cal. Civ. Code § 51 *et seq.*; (iv) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; (v) violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 17500 *et seq.*; and (vi) common law fraudulent misrepresentation. Compl. ¶¶ 41-81 (Dkt. No. 1).

Wyndham removed the case to federal court on August 7, 2013 under the Class Action Fairness Act ("CAFA"). Notice of Removal ¶¶ 9-20 (Dkt. No. 1). Shortly thereafter, Wyndham moved to compel arbitration and to stay all other proceedings pending arbitration. Dkt. No. 15 ("Mot. to Compel"). I granted the motion on November 4, 2013 and issued an amended order on November 8, 2013. Dkt. Nos. 26-27 ("Order Compelling Arbitration"). On July 10, 2014, the Ninth Circuit dismissed plaintiffs' appeal for lack of jurisdiction. Dkt. No. 36.

Plaintiffs filed their arbitration demand with the American Arbitration Association ("AAA") on February 27, 2015. Morency Apr. 29, 2015 Decl. Exs. 1A-1B (Dkt. No. 47-1). On March 11, 2015, plaintiffs sent a letter to the AAA requesting that the arbitration include class relief. *Id.* at Ex. 2. Wyndham responded that it did not consent to class treatment and that it

1  would "present this gateway issue to the Court" if the parties could not resolve the matter in
2  mediation. *Id.* at Ex. 3.
3       Wyndham filed this motion on April 29, 2015. It seeks an order (1) compelling arbitration
4  of plaintiffs' claims; (2) declaring that class arbitration is not available; and (3) staying the case
5  pending arbitration. Mot. at 1. Following oral argument on June 3, 2015, I issued an order
6  requesting supplemental briefing on "whether the parties clearly and unmistakably agreed that an
7  arbitrator would decide whether class arbitration is available" under the February 2011
8  Agreement. Dkt. No. 51. The parties submitted their supplemental briefs on June 26, 2015. Dkt.
9  Nos. 52-53.

## LEGAL STANDARD

The parties agree that the FAA governs this motion. Under 9 U.S.C. § 2, the "primary substantive provision" of the FAA, *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983), a written agreement to arbitrate "in any maritime transaction or a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract," 9 U.S.C. § 2. This provision reflects "both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011) (internal quotation marks and citations omitted). "Because arbitration is fundamentally a matter of contract, the central or primary purpose of the FAA is to ensure that private agreements to arbitrate are enforced according to their terms." *Momot v. Mastro*, 652 F.3d 982, 986 (9th Cir. 2011) (internal quotation marks omitted).

On a motion to compel arbitration, the court's role under the FAA is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). If the court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

**DISCUSSION**

A threshold issue here is whether I may grant the relief that Wyndham seeks – that is, whether I may determine whether class arbitration is available under the February 2011 Agreement, or whether that is a question that must be decided by the arbitrator. "The [FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses*, 460 U.S. at 24-25. Nevertheless, "so-called 'question[s] of arbitrability' [ – ] which include certain gateway matters, such as whether parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a [particular] controversy – are presumptively for courts to decide." *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2068 n.2 (2013) (some internal quotation marks omitted); *see also Momot*, 652 F.3d at 987 (issues that "contracting parties would likely have expected a court to have decided" are "gateway questions of arbitrability" to be determined by the court, not the arbitrator). This rule flows from the "principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945 (1995).

"Although gateway issues of arbitrability presumptively are reserved for the court, the parties may agree to delegate them to the arbitrator." *Momot*, 652 F.3d at 987. Generally, "[w]hen deciding whether the parties agreed to arbitrate a certain matter . . . , courts . . . should apply ordinary state law principles that govern the formation of contracts." *First Options*, 514 U.S. at 944. Because gateway issues presumptively are for courts to decide, however, courts "apply a more rigorous standard in determining whether the parties have agreed to arbitrate [such] question[s]." *Momot*, 652 F.3d at 987. "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *First Options*, 514 U.S. at 944 (internal quotations marks and alterations omitted); *accord Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 69 n.1 (2010).

The disputed issue in this case is the availability of class arbitration. The Supreme Court "has not yet decided whether the availability of class arbitration is a question of arbitrability." *Oxford*, 133 S. Ct. at 2068 n.2; *see also Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S.

4

662, 678-80 (2010) (noting that "no single rationale commanded a majority" in *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444 (2003), and that "only a plurality" found that the availability of class arbitration should be determined by the arbitrator). The Ninth Circuit has not issued a published opinion deciding the issue either.[3] The only two circuit courts to squarely address the issue since *Stolt-Nielsen* have both held that the availability of class arbitration is a question of arbitrability for the court to decide unless the parties clearly and unmistakably provide otherwise. *See Opalinski v. Robert Half Int'l Inc.*, 761 F.3d 326, 335-36 (3d Cir. 2014) ("[T]he availability of class arbitration is a question of arbitrability for a court to decide unless the parties unmistakably provide otherwise.") (internal quotation marks omitted); *Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett*, 734 F.3d 594, 599 (6th Cir. 2013) ("[T]he question whether an arbitration agreement permits classwide arbitration is a gateway matter . . . reserved for judicial determination unless the parties clearly and unmistakably provide otherwise.") (internal quotation marks omitted).

A number of district courts have held the same. *See, e.g., Chesapeake Appalachia, LLC v. Suppa*, No. 14-cv-00159, 2015 WL 966326, at *8 (N.D.W. Va. Mar. 4, 2015); *Chesapeake Appalachia, L.L.C. v. Scout Petroleum, LLC*, No. 14-cv-00620, 2014 WL 7335045, at *14 (M.D. Pa. Dec. 19, 2014); *Chico v. Hilton Worldwide, Inc.*, No. 14-cv-05750, 2014 WL 5088240, at *11 (C.D. Cal. Oct. 7, 2014) (relying on *Opalinski* and *Reed Elsevier* and holding that "because the

---

[3] The Ninth Circuit briefly addressed the issue in *Eshagh v. Terminix Int'l Co., L.P.*, 588 F. Appx. 703 (9th Cir. 2014). The Court stated in relevant part:

> Finally, the district court did not err in striking [the] class claims. Issues that "contracting parties would likely have expected a court to have decided" are considered "gateway questions of arbitrability" for courts, and not arbitrators, to decide. *Momot v. Mastro*, 652 F.3d 982, 987 (9th Cir. 2011). The Supreme Court has made it clear that "class action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 685 (2010); *see also Concepcion,* 131 S. Ct. at 1750-52 (emphasizing the "fundamental" changes implicated in the shift from bilateral to class action arbitration).

*Id.* at 704.

parties did not clearly and unmistakably provide otherwise, the Court, rather than the arbitrator, must decide whether the Arbitration Agreements authorize class arbitration"); *Torres v. CleanNet, U.S.A., Inc.*, No. 14-cv-02818, 2015 WL 500163, at *10 (E.D. Pa. Feb. 5, 2015); *Chassen v. Fid. Nat. Fin., Inc.*, No. 09-cv-00291, 2014 WL 202763, at *6 (D.N.J. Jan. 17, 2014).[4]

Resolving the instant motion does not require me to decide whether the availability of class arbitration is a gateway issue, because here, the parties clearly and unmistakably agreed to submit that question to the arbitrator. *See AccentCare Inc. v. Echevarria*, No. 15-cv-01078-JSW, 2015 WL 3465761, at *3 (N.D. Cal. June 1, 2015) (declining to address whether the availability of class arbitration is a question of arbitrability where there was "clear and unmistakable evidence that the parties intended arbitrability to be determined by the arbitrator"); *Marriott Ownership Resorts, Inc. v. Flynn*, No. 14-cv-00372, 2014 WL 7076827, at *12 (D. Haw. Dec. 11, 2014) (same).

Wyndham does not dispute that by agreeing that their dispute resolution process would be "conducted in accordance with procedures that are equivalent in substance to the Commercial Arbitration Rules of the American Arbitration Association," Feb. 2011 Agmt. ¶ 18(d), the parties incorporated the AAA Commercial Arbitration Rules ("Commercial Rules"), as well as the AAA Supplementary Procedures for the Resolution of the Consumer-Related Disputes ("Consumer Procedures"), into the February 2011 Agreement. *See* Mot. at 10-12; Reply at 3-4 (Dkt. No. 49); *see also* Defendants' Reply in Support of Motion to Compel Arbitration at 4 (Dkt. No. 17) ("Reply ISO Mot. to Compel"). Several courts have held that where the parties incorporate the Commercial Rules into their arbitration agreement, they clearly and unmistakably agree to submit the availability of class arbitration to the arbitrator. *See Reed v. Florida Metro. Univ., Inc.*, 681 F.3d 630, 635-36 (5th Cir. 2012) *abrogated on other grounds by Oxford*, 133 S. Ct. 2064; *Marriott*, 2014 WL 7076827, at *12-15; *Bergman v. Spruce Peak Realty, LLC*, No. 11-cv-00127,

---

[4] District courts are by no means in uniformity on this issue. A number have held that the availability of class arbitration is a procedural issue for the arbitrator to decide. *See, e.g., Harrison v. Legal Helpers Debt Resolution, LLC*, No. 12-cv-002145, 2014 WL 4185814, at *2-5 (D. Minn. Aug. 22, 2014)*; In re A2P SMS Antitrust Litig.*, No. 12-cv-02656, 2014 WL 2445756, at *10-12 (S.D.N.Y. May 29, 2014); *Lee v. JPMorgan Chase & Co.*, 982 F. Supp. 2d 1109, 1113-15 (C.D. Cal. 2013).

2011 WL 5523329, at *4 (D. Vt. Nov. 14, 2011).

These courts have reasoned that an agreement to the Commercial Rules "also includes an agreement to the AAA Supplementary Rules for Class Arbitrations." *Marriott*, 2014 WL 7076827, at *12; *see also Reed*, 681 F.3d at 635 ("[T]he parties' agreement to the [Commercial Rules] also constitutes consent to the Supplementary Rules."); *Bergman*, 2011 WL 5523329, at *3. Rule 3 of the AAA Supplementary Rules for Class Arbitrations ("Supplementary Rules") provides for "construction of the arbitration clause" as follows:

> Upon appointment, the arbitrator shall determine as a threshold matter, in a reasoned, partial final award on the construction of the arbitration clause, whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class (the "Clause Construction Award"). The arbitrator shall stay all proceedings following the issuance of the Clause Construction Award for a period of at least 30 days to permit any party to move a court of competent jurisdiction to confirm or to vacate the Clause Construction Award.

AAA Supp. R. 3 (effective Oct. 8, 2003) (Morency Apr. 29, 2015 Decl. Ex. 4, Dkt. No. 47-1). *Reed*, *Marriot*, and *Bergman*, as well as numerous other courts, have held that in light of this language – which authorizes the arbitrator to determine "whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class" – a party that agrees to the Supplementary Rules clearly and unmistakably agrees to delegate the availability of class arbitration to the arbitrator. *See Reed*, 681 F.3d at 635-36 ("The parties' consent to the Supplementary Rules . . . constitutes a clear agreement to allow the arbitrator to decide whether [their] agreement provides for class arbitration."); *Marriott*, 2014 WL 7076827, at *12-15 ("[I]ncorporation of the Supplementary Rules constitutes clear and unmistakable evidence of an intent to have an arbitrator address the question of class arbitrability."); *Bergman*, 2011 WL 5523329, at *3-5 (relying on Supplementary Rule 3 in holding that "whether there is a contractual basis for concluding that the defendants agreed to submit to class arbitration is an issue that must be referred to the arbitrator"); *see also Chesapeake Appalachia, LLC v. Burkett*, No. 13-cv-03073, 2014 WL 5312829, at *4-8 (M.D. Pa. Oct. 17, 2014) (relying in part on Supplementary Rule 3 in holding that "incorporation of the AAA rules into the lease at issue . . . vested the arbitrators with the authority in this case to decide issues of arbitrability, including the issue of 'who decides' class

7

arbitrability."); *Price v. NCR Corp.*, 908 F. Supp. 2d 935, 945 (N.D. Ill. 2012) (by incorporating the Supplementary Rules into their agreement, "the parties agreed that an arbitrator, and not this Court, would determine whether the agreement authorizes class arbitration"); *S. Commc'ns Servs., Inc. v. Thomas*, 829 F. Supp. 2d 1324, 1337-38 (N.D. Ga. 2011) (incorporation of the Supplementary Rules "gave the arbitrator the power to decide whether the Arbitration Clause implicitly authorized class proceedings"); *Yahoo! Inc. v. Iversen*, 836 F. Supp. 2d 1007, 1012 (N.D. Cal. 2011) (Koh, J.) ("[T]he incorporation by reference of the AAA Supplementary Rules . . . . constitutes a clear and unmistakable agreement to have the arbitrator decide questions regarding the arbitrability of classwide claims.") (internal quotation marks and alterations omitted).[5]

In its supplemental brief, Wyndham takes issue with the notion that an agreement to the Commercial Rules constitutes an agreement to the Supplementary Rules. *See* Dkt. No. 52 at 2-6. Wyndham emphasizes that many of the decisions that have relied on the Supplementary Rules in holding that the parties clearly and unmistakably agreed to delegate the availability of class

---

[5] In *AccentCare Inc. v. Echevarria*, the district court found clear and unmistakable evidence of an intent to delegate the question of the availability of class arbitration based on the parties' incorporation of the AAA National Rules for the Resolution of Employment Disputes, without consideration of whether the parties had also incorporated the Supplementary Rules. *See* 2015 WL 3465761, at *3-4. The district court relied on *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069 (9th Cir. 2013), in which the Ninth Circuit held that incorporation of the United Nations Commission on International Trade Law ("UNCITRAL") rules constitutes a clear and unmistakable delegation of questions of arbitrability to the arbitrator. In so holding, the Ninth Circuit recognized that "[v]irtually every circuit to have considered the issue has determined that incorporation of the [AAA rules] constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Id.* at 1074. The Ninth Circuit noted that the AAA rules' jurisdictional provision, Commercial Rule 7(a), provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." *Id.* at 1074 n.1. Observing that the UNCITRAL rules contain an "almost identical" jurisdictional provision, the Ninth Circuit concluded that "as long as an arbitration agreement is between sophisticated parties to commercial contracts, those parties shall be expected to understand that incorporation of the UNCITRAL rules delegates questions of arbitrability to the arbitrator." *Id.* at 1075. Here, the parties' undisputed incorporation of Rule 7(a) into their arbitration agreement certainly weighs in favor of the conclusion that they clearly and unmistakably agreed to submit the availability of class arbitration to the arbitrator. But given the Supreme Court's emphasis in *Stolt-Nielsen* on the differences between bilateral and class arbitration, s*ee* 559 U.S. at 684-87, the parties' incorporation of the Supplementary Rules provides the stronger basis for that conclusion.

8

arbitration to the arbitrator involved arbitration provisions that incorporated either the "AAA rules" without specifying which AAA rules, or the AAA Employment Arbitration Rules ("Employment Rules").[6]  Wyndham points out that the Employment Rules, unlike the Commercial Rules, specifically refer to the Supplementary Rules.  Dkt. No. 52 at 3.

However, the reference in the Employment Rules to the Supplementary Rules consists only of a one-sentence section titled, "For Disputes Proceeding Under the Supplementary Rules for Class Action Arbitration ('Supplementary Rules')," which states in whole, "The AAA's Administered Fee Schedule, as listed in Section 11 of the [Supplementary Rules], shall apply to disputes proceedings under the Supplementary Rules."  AAA Emp. R. at p. 40.  I am not convinced that this passing reference – which says nothing about "incorporation" or the like of the Supplementary Rules – is enough to support the conclusion that agreement to the Employment Rules is equivalent to agreement to the Supplementary Rules, while agreement to the Commercial Rules is not.

Further, under Rule 1(a) of the Commercial Rules, contracting parties are "deemed to have made [the Commercial Rules] a part of their arbitration agreement whenever they have provided . . . for arbitration by the AAA of a domestic commercial dispute without specifying particular rules."  AAA Comm. R. 1(a) (effective June 1, 2009) (Morency June 26, 2015 Decl. Ex. 1, Dkt. No. 52-1); *see also* AAA Comm. R. 1(a) (effective Oct. 1, 2013) (Morency June 26, 2015 Decl. Ex. 2, Dkt. No. 52-1) (same).  In other words, an agreement to arbitrate a domestic commercial dispute pursuant to the "AAA rules" without specifying which AAA rules is an agreement to the Commercial Rules.  This greatly diminishes any distinction between this case and those holding that an agreement to arbitrate under unspecified "AAA rules" constitutes an agreement to arbitrate under the Supplementary Rules and, hence, an agreement to delegate the question of the availability of class arbitration.  *See Burkett*, 2014 WL 5312829, at *4-8 (agreement to arbitrate "in accordance with the rules of the [AAA]"); *Price*, 908 F. Supp. 2d at

---

[6] The AAA Employment Arbitration Rules were previously titled, "AAA National Rules for the Resolution of Employment Disputes."  *See* AAA Emp. R. 1 (effective Nov. 1, 2009) (Morency June 26, 2015 Decl. Ex. 6, Dkt. No. 52-1).

945 (agreement to arbitrate "under the [AAA] rules").

Wyndham's position is further undermined by Rule 1(a) of the Supplementary Rules, which strongly indicates that those rules do apply here. Rule 1(a) describes the "applicability" of the Supplementary Rules as follows:

> These Supplementary Rules for Class Arbitrations ("Supplementary Rules") shall apply to any dispute arising out of an agreement that provides for arbitration pursuant to any of the rules of the [AAA] where a party submits a dispute to arbitration on behalf of or against a class or purported class, and shall supplement any other applicable AAA rules. These Supplementary Rules shall also apply whenever a court refers a matter pleaded as a class action to the AAA for administration, or when a party to a pending AAA arbitration asserts new claims on behalf of or against a class or purported class.

AAA Supp. R. 1(a). In its briefing on its motion to compel arbitration, Wyndham relied on a similar applicability provision from the Consumer Procedures in arguing that those procedures *were* incorporated into the parties' arbitration agreement by merit of their agreement to the Commercial Rules. *See* Reply ISO Mot. to Compel at 4, 4 n.2.[7] Wyndham does not explain why the Consumer Procedures' applicability provision does justify incorporating them into the parties' arbitration agreement, while the Supplementary Rules' applicability provision does not.

Wyndham also cites to several cases which, according to Wyndham, demonstrate that "[c]ourts have repeatedly rejected the contention that . . . a reference to the . . . Commercial Rules [like the one in dispute resolution clause of the February 2011 Agreement] is sufficient . . . to establish a 'clear and unmistakable' delegation to an arbitrator of the gateway question of class

---

[7] The applicability provision from the Consumer Procedures provides in relevant part:

> The Commercial Dispute Resolution Procedures and these Supplementary Procedures for Consumer-Related Disputes shall apply whenever the [AAA] or its rules are used in an agreement between a consumer and a business where the business has a standardized, systematic application of arbitration clauses with customers and where the terms and conditions of the purchase of standardized, consumable goods or services are non-negotiable or primarily non-negotiable in most or all of its terms, conditions, features, or choices.

AAA Consumer Proc. 1(a) (Youngblood Sep. 27, 2013 Decl. Ex. A, Dkt. No. 18-1).

10

1    arbitration." Dkt. No. 52 at 5. However, not one of the cases cited by Wyndham in support of this
2    claim actually addresses this issue.[8]

3           In *Reed Elsevier*, the Sixth Circuit held that the parties did not clearly and unmistakably
4    agree to arbitrate the availability of class arbitration – despite the fact that the arbitration provision
5    incorporated the Commercial Rules – on the ground that the provision did "not mention classwide
6    arbitration at all." 734 F.3d at 599. But in making that determination, the court does not appear to
7    have considered whether the parties' incorporation of the Commercial and Supplementary Rules
8    constituted a clear and unmistakable agreement to delegate the availability of class arbitration to
9    the arbitrator. *See id.* at 599-600. The court merely observed that the arbitration clause "does not
10   mention classwide arbitration at all," and that this "silen[ce]" on the issue of classwide arbitration
11   "is not enough to wrest that decision from the courts." *Id.* (citing *Stolt-Nielsen*, 559 U.S. at 684-
12   85).[9] The court clearly considered whether the parties' incorporation of the Commercial and
13   Supplementary Rules evinced their agreement to arbitrate on a classwide basis. *See id.*
14   ("[Appellant] responds that the arbitration clause refers to the [Commercial Rules], which
15   themselves incorporate the [Supplementary Rules]. But the [Supplementary Rules] expressly state
16   that one should 'not consider the existence of these Supplementary Rules, or any other AAA rules,

---

[8] This is not to say that there is no contrary authority. At least one district court has held that incorporation of the Supplementary Rules is insufficient to establish a clear and unmistakable agreement to submit the availability of class arbitration to the arbitrator. *See Chesapeake Appalachia, LLC v. Suppa*, No. 14-cv-00159, 2015 WL 966326, at *8-10 (N.D.W. Va. Mar. 4, 2015).

[9] The Sixth Circuit's reliance on *Stolt-Nielsen* in this respect appears to be based on a misreading of that case. First, the issue in *Stolt-Nielsen* was whether the parties had agreed to authorize class arbitration, not whether they had agreed to delegate the availability of class arbitration to the arbitrator. *See* 559 U.S. at 680, 684-85. Second, *Stolt-Nielsen* uses the word "silent" in the sense that the parties "had not reached any agreement on the issue of class arbitration," *id.* at 673, not to mean that the arbitration clause "made no express reference to class arbitration," *id.* at 668-69. Accordingly, as Judge Illston has explained, the failure to include an express reference to class arbitration in an arbitration agreement "does not necessarily equate with the 'silence' discussed in *Stolt-Nielson*." *Vazquez v. ServiceMaster Global Holding Inc.*, No. 09-cv-05148-SI, 2011 WL 2565574, at *3 n.1 (N.D. Cal. June 29, 2011); *accord Burkett*, 2014 WL 5312829, at *4, 4 n.3; *Parvataneni v. E*Trade Fin. Corp.*, 967 F. Supp. 2d 1298, 1303 (N.D. Cal. 2013); *Iversen*, 836 F. Supp. 2d at 1011.

United States District Court
Northern District of California

to be a factor either in favor of or against permitting the arbitration to proceed on a class basis.'"). But that is a different issue, one that I may only consider if the parties did not clearly and unmistakably agree to submit it to the arbitrator.[10]

In *Tompkins v. 23andMe, Inc.*, No. 13-cv-05682-LHK, 2014 WL 2903752 (N.D. Cal. June 25, 2014), the arbitration provision did not expressly incorporate the Commercial Rules, instead providing that any disputes "shall be resolved by final and binding arbitration under the rules and auspices of the [AAA]." *Id.* at *2. Judge Koh rejected the defendant's contention that the parties had agreed to delegate unconscionability and other gateway issues to the arbitrator.[11] She reasoned that the plaintiffs were not sophisticated parties, that the arbitration provision contained "no express delegation language," and that the phrase, "rules and auspices of the [AAA]," created "multiple ambiguities about which rules ultimately apply." *Id.* at *12. She stated: "This language forces a customer to comprehend the import of the 'rules and auspices' of the AAA; locate those rules independently; determine that the [Commercial Rules] apply by operation of [Rule 1(a)]; and then specifically identify [Rule 7(a)] to learn of the delegation provision." *Id.*

Here, in contrast, the parties agreed not to the AAA rules in general, but to the Commercial Rules in specific. Moreover, I have already determined, *at Wyndham's urging*, that Rule 7(a) does apply here and does require that "the scope of the arbitration clause . . . be decided by the arbitrator." Order Compelling Arbitration at 8-9 (rejecting plaintiffs' contention that their claims were beyond the scope of the dispute resolution clause and holding that, under Rule 7(a),

---

[10] *Lopez v. Ace Cash Express, Inc.*, No. 11-cv-04611, 2012 WL 1655720 (C.D. Cal. May 4, 2012), also cited by Wyndham, is distinguishable for the same reason. The court in that case held that the parties' incorporation of the AAA "National Rules" did not establish their agreement to class arbitration, but the court does not appear to have considered the separate issue of whether the parties agreed to delegate the availability of class arbitration to the arbitrator. *See id.* at *8.

[11] The defendant based this argument on Commercial Rules 1(a) and 7(a). As noted above, Rule 1(a) provides in relevant part that "[t]he parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided . . . for arbitration by the AAA of a domestic commercial dispute without specifying particular rules." 2014 WL 2903752, at *10. Also noted above, Rule 7(a) provides that the arbitrator decides questions of arbitrability: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." *Id.*

"interpretation of the scope of the [clause] must be submitted to arbitration").[12] In any event, *Tompkins* does not specifically address the availability of class arbitration or the delegation of that question to the arbitrator.

As noted in footnote 2 above, the Ninth Circuit in *Eshagh* held that the district court did not err in striking class claims in the process of compelling arbitration, reasoning that "[i]ssues that contracting parties would likely have expected a court to have decided are considered gateway questions of arbitrability for courts, and not arbitrators, to decide." 588 F. Appx. at 704 (internal quotation marks omitted). Wyndham is correct that the arbitration provision in that case provided for arbitration "in accordance with the Commercial Arbitration Rules then in force of the [AAA]." *Eshagh v. Terminix Int'l Co. L.P.*, No. 11-cv-00222, 2012 WL 1669416, at *3 (E.D. Cal. May 11, 2012). But Wyndham fails to note that neither the underlying district court order not the Ninth Circuit opinion addresses whether the parties clearly and unmistakably agreed to arbitrate the availability of class arbitration.

Finally, in *Moody v. Metal Supermarket Franchising Am. Inc.*, No. 13-cv-05098-PJH, 2014 WL 988811 (N.D. Cal. Mar. 10, 2014), the court considered an arbitration clause providing for arbitration "in accordance with the then current commercial arbitration rules of the AAA." *Id.* at *3. The court found that this "general reference" to the Commercial Rules did not provide clear and unmistakable evidence of an agreement to delegate arbitrability. *Id.* But the case was not a putative class action, and the court's opinion does not address the availability of class arbitration or the applicability of the Supplementary Rules. Moreover, the case is at odds with the Ninth Circuit's recognition in *Oracle* that "[v]irtually every circuit to have considered the issue has

---

[12] In its supplemental brief, Wyndham contends that "[t]here is nothing in the substance of [the Commercial Rules] that delegates the arbitrability of gateway issues like class treatment . . . [Rule 7(a)] neither addresses 'who decides' questions of arbitrability in general, nor mentions who decides the gateway issue of class arbitration." Dkt. No. 52 at 4 (internal quotation marks omitted). This marks a significant change in viewpoint from Wyndham's briefing on its motion to compel arbitration, where Wyndham argued that Rule 7(a) "represents 'clear and unmistakable' evidence of the parties' intention that the arbitrator should decide issues of arbitrability." Reply ISO Mot. to Compel at 4; *see also* Mot. to Compel at 9-10 (citing Rule 7(a) and stating that "the February 2011 Agreement essentially provides that it is for the arbitrator to determine, in the first instance, the formation and scope of the arbitration agreement").

13

determined that incorporation of the [AAA rules] constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." 724 F.3d at 1074. Nearly every decision in this district since *Oracle* – including the Order Compelling Arbitration in this case – has found that the incorporation of the Commercial Rules or other AAA rules is sufficient to establish the delegation of gateway issues. *See, e.g.,* Order Compelling Arbitration at 8-9; *Zenelaj v. Handybook Inc.*, No. 14-cv-05449-TEH, 2015 WL 971320, at *3-5 (N.D. Cal. Mar. 3, 2015) (declining to follow *Moody* and finding clear and unmistakable agreement to arbitrate arbitrability based on incorporation of Commercial Rules); *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, No. 14-cv-02510, 2014 WL 7206620, at *4 (N.D. Cal. Dec. 18, 2014) (finding clear and unmistakable agreement to arbitrate arbitrability based on incorporation of "the rules of procedure of the AAA"); *Bernal v. Sw. & Pac. Specialty Fin., Inc.*, No. 12-cv-05797-SBA, 2014 WL 1868787, at *4 (N.D. Cal. May 7, 2014) (same, based on incorporation of Commercial Rules and Consumer Procedures); *but see Tompkins*, 2014 WL 2903752 at *10-13.

## CONCLUSION

For the foregoing reasons, Wyndham's motion is DENIED. It is up to the arbitrator to decide whether class arbitration is available under the February 2011 Agreement. This case remains STAYED pending arbitration. The parties shall submit a joint case management statement 180 days from the date of this order, and every 180 days thereafter, apprising the Court of the status of their arbitration.[13]

**IT IS SO ORDERED**.

Dated: July 20, 2015



WILLIAM H. ORRICK
United States District Judge

---

[13] Wyndham's request for certification under 28 U.S.C. § 1292(b) is DENIED.

14